# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **T.M.**, | Case No. 1:23-cv-762 |
| Plaintiff, | Hon. |
| v. | **COMPLAINT / JURY DEMAND** |
| **MICHIGAN DEPARTMENT OF EUCATION**, | |
| Defendant. | |

Elizabeth K. Abdnour (P78203)
**ABDNOUR WEIKER, LLP**
500 E. Michigan Ave, Ste. 130
Lansing, MI 48912
517-994-1776
liz@education-rights.com

Jacquelyn Babinski (P83575)
**BARGER & GAINES**
90 North Broadway
Irvington, NY 10533
(914) 902-5918
jacquelyn@bargergaines.com

*Attorneys for Plaintiff*

## COMPLAINT AND JURY DEMAND

Plaintiff T.M., through her attorneys, Elizabeth K. Abdnour and Jacquelyn Babinski, brings this Complaint and Jury Demand and states:

### PRELIMINARY STATEMENT

1. T.M. is a young adult with disabilities who attended and graduated from Detroit Public Schools Community District (DPSCD) and who suffered substantial academic harm and lost educational experience and opportunity due to the Michigan Department of Education's (MDE) failure to properly oversee and train hearing officers assigned to hear special education due process hearings within the Michigan Office of Administrative Hearings and Rules (MOAHR).

2. Following several and repeated violations of the IDEA by DPSCD, Plaintiff's mother filed a Due Process Hearing Request and Complaint against DPSCD on April 12, 2021.

3. As it does with all cases, MDE's Office of Special Education (OSE) referred the complaint to MOHAR to perform the hearing functions in the case.

4. Due MDE's failure to properly oversee and train MOAHR staff and in violation of the IDEA, Plaintiff and her mother did not receive a decision on the April 2021 complaint until January 13, 2022, a 641-day complaint resolution timeline.

5. Further, Plaintiff had to file a due process complaint against MDE in December 2022 just to obtain the January 13, 2023, decision.

6. The January 13, 2023, decision was riddled with errors, and Plaintiff subsequently filed a second due process complaint against MDE in April 2023 alleging additional failures by MDE in the training and oversight process of MOAHR staff with respect to the handling of due process complaints.

7. Both of Plaintiff's due process complaints against MDE were dismissed by MOAHR, and she has fully exhausted her administrative remedies.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiff T.M. is an eighteen-year-old individual who, at all relevant times, resided within and attended DPSCD in Wayne County, Michigan.[1] T.M. has been diagnosed with Sickle Cell Anemia, ADHD, developmental delays, and speech and language delays. While she was a DPSCD student, T.M. was eligible for special education and related services under the IDEA. T.M. was eligible for special education and entitled to receive a free appropriate public education (FAPE) at all relevant times. T.M. is also an individual with a disability

---

[1] T.M. graduated from DPSCD in June 2022.

within the meaning of Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 (Section 504), and Michigan's Persons with Disabilities Civil Rights Act (PDCRA), as she has a physical and mental impairment that substantially limits one or more major life activities including processing information, concentrating, and learning.

9. Defendant MDE is the state education agency (SEA) primarily responsible for the supervision of the provision of special education in Michigan's public elementary and secondary schools, or local educational agencies (LEAs). 20 U.S.C. § 1401(19), (32).

10. MDE receives funding pursuant to the Individuals with Disabilities Education Act (IDEA) by submitting to the Secretary of the U.S. Department of Education "assurances…that the State has in effect policies and procedures to ensure that…[a] free appropriate public education is available to all children with disabilities residing in the State." 20 U.S.C. § 1412.

11. MDE also receives federal assistance and qualifies as a program under Section 504, 29 U.S.C. § 794.

12. As a SEA, MDE is a public entity subject to Title II of the ADA. 42 U.S.C. § 12131.

13. Jurisdiction is conferred upon this Court by the IDEA, 20 U.S.C. §§ 1415(i)(2)(A) and 1415(i)(3)(A), which provides U.S. district courts with jurisdiction over any action brought under the IDEA, without regard to the amount in controversy.

14. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, based upon the federal question raised herein, and 28 U.S.C. § 1343, because this action is brought to vindicate Plaintiff's civil rights.

15. This Court also has jurisdiction pursuant to the ADA, as amended, 42 U.S.C. § 12101 *et seq.*, and Section 504, 29 U.S.C. § 794.

16. This Court has supplemental jurisdiction over claims arising under the Michigan Mandatory Special Education Act (MMSEA), M.C.L. 380.1701 *et seq.*; the Michigan Administrative Rules for Special Education (MARSE), Mich. Admin. R. 340.1701 *et seq.*; and the Michigan Persons with Disabilities Civil Rights Act (PDCRA), M.C.L. 37.1101 *et seq.*, pursuant to 28 U.S.C. § 1367(a).

17. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as Defendant operates within the Western District of Michigan, and all events and omissions giving rise to this Complaint occurred in this district.

18. To the extent that administrative exhaustion is required, Plaintiff has exhausted her remedies by filing due process actions against MDE on December 19, 2022, and April 20, 2023, which were dismissed on April 18, 2023, and June 29, 2023, respectively.

19. As it pertains to this Complaint against MDE, Plaintiff has fully complied with all due process complaint requirements.

20. There remains no other forum in which Plaintiffs' claims against MDE can be vindicated.

## GENERAL ALLEGATIONS

21. MDE is the state educational agency that is responsible for administering and enforcing laws related to public education. M.C.L. 16.400-16.402.

22. As an SEA, MDE is responsible for the State supervision of public elementary and secondary schools and is specifically "responsible for ensuring" all eligible Michigan children with disabilities receive a FAPE in the least restrictive environment (LRE). 20 U.S.C. §§ 1412(a)(11)(A), (a)(1), (a)(5).

4

23. As an SEA, MDE also has general supervisory responsibility for implementing IDEA's requirements. 20 U.S.C. § 1412(a)(11)(A).

24. MDE is specifically "responsible for ensuring" that IDEA's regulations are carried out and is responsible for its general supervision over each educational program for children with disabilities to ensure the programs meet MDE's educational standards, which include IDEA's regulatory requirements. 34 C.F.R. § 300.149(a).

25. Such responsibility includes coordinating with other public agencies as needed to ensure that children with disabilities receive the education to which they are entitled under IDEA. 20 U.S.C. § 1412(a)(12).

26. Under the IDEA, MDE, as the SEA, also has additional responsibilities when it comes to resolving administrative complaints. The IDEA provides that in resolving an administrative complaint:

> In which the SEA has found a failure to provide appropriate services, and SEA, pursuant to its general supervisory authority under Part B of the [IDEA], must address –
> 1. The failure to provide appropriate services, including corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and
> 2. Appropriate future provision of services for all children with disabilities.

34 C.F.R § 300.151(b).

27. MDE's duties are similarly codified in state law.

28. For example, the Michigan Mandatory Special Education Act (MMSEA), a state law enacted to meet the requirements of IDEA,[2] ensures special education to Michigan's children with disabilities from birth to age 26. M.C.L. 380.1701 *et seq.*

---

[2] *Miller ex rel. Miller v. Lord*, 262 Mich. App. 640, 645 (2004).

29. MARSE sets forth the requirements for special education and related services for the State of Michigan, providing how special education is to be implemented in Michigan. Mich. Admin. R. 340.1701c(c).

30. MARSE defines special education as "specially designed instruction, at no cost to the parents, to meet the unique educational needs of the student with a disability and to develop the student's maximum potential." Special education includes instructional services defined in Mich. Admin. R. 340.1721a.

31. Pursuant to MARSE, "[t]he individualized education program team shall determine the programs and services for a student with a disability in accordance with 34 C.F.R. part 300. The individualized education program shall not be restricted to the programs and services available." Mich. Admin. R. 340.1721e(4).

32. MARSE charges MDE to maintain an effective complaint resolution process for claims of denied education or failure of the district to provide evaluations, programs, and services in accordance with MARSE. Mich. Admin. R. 340.1851-55.

33. The IDEA incorporates the standards of the MMSEA and MARSE. *Doe By and Through Doe v. Board of Education of Tullahoma City Schools*, 9 F.3d 455, 457 (6th Cir. 1993) (stating, in the 6th Circuit, it is "settled" that violations of any state law that enlarges the scope of an educational agency's obligations are still enforceable under IDEA, even if federal law is satisfied) (citing *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 620 (6th Cir. 1990) (It is "beyond cavil that the federal [IDEA] standard explicitly incorporates some of a state's substantive law.")).

34. As Michigan's SEA, MDE bears the ultimate responsibility for ensuring that all public schools in Michigan comply with the IDEA, including, by extension, the MMSEA and MARSE.

## FACTUAL ALLEGATIONS

**Introduction**

35. T.M. is a young adult and former public-school student with a disability which adversely affected her educational performance.

36. T.M. is 18 years old and was born on November 19, 2004.

37. T.M. has the following medical diagnoses: Sickle Cell Anemia, Attention Deficit Hyperactivity Disorder (ADHD), developmental delays, and speech and language delays.

38. T.M. resides with her mother, S.C., in Detroit, Michigan.

39. T.M. graduated from DPSCD in June 2022.

40. DPSCD was responsible for providing T.M. with a FAPE pursuant to the IDEA and Section 504.

41. T.M. was on an IEP consistently since she was 2 years old. Her first IEP was implemented on September 12, 2007.

42. T.M. attended DPSCD schools for her entire K-12 education and made minimal progress toward her IEP goals and the general education curriculum.

**April 2021 Due Process Complaint Against DPSCD**

43. On April 13, 2021, S.C. filed a due process complaint alleging that DPSCD was not providing T.M. with FAPE.

44. Per its usual practice, MDE referred the complaint to MOAHR for hearing and it was assigned to Administrative Law Judge (ALJ) Paul Smith.

45. On January 13, 2023, ALJ Smith finally issued a decision in the matter of *S.C. o/b/o T.M. v. Detroit Public Schools Community District*, Docket No.: 21-007624, Case No.: DP-21-0007.

46. When the decision was issued, the matter had been pending for <u>261 days</u> since the due process hearing concluded and for <u>641 days</u> since S.C. filed the complaint.

47. T.M. has filed an appeal of that decision with the U.S. District Court for the Eastern District of Michigan, which is currently pending as Case No. 2:23-cv-10852.

48. T.M. does not seek to relitigate those claims via this action.

49. T.M. brings this action against MDE only due to its failure to properly train and oversee hearing officers and its failure to properly implement the IDEA in T.M.'s due process hearing proceeding.

**MDE's Violations of the IDEA**

*<u>Violations Within the January 13, 2023, Hearing Decision</u>[3]*

50. ALJ Smith's January 13, 2023, hearing decision is riddled with errors and provides evidence that he was not properly trained in violation of IDEA requirements.

51. Pursuant to the IDEA:

> A hearing officer conducting a hearing pursuant to paragraph (1)(A) shall, at a minimum— …
>
> > a. possess knowledge of, and the ability to understand, the provisions of this chapter, Federal and State regulations pertaining to this chapter, and legal interpretations of this chapter by Federal and State courts;
> > b. possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and

---

[3] T.M. has already filed an appeal of that decision with the U.S. District Court for the Eastern District of Michigan, Case No. 2:23-cv-10852, against DPSCD.  T.M. is providing this information for background only to aid this Court's understanding of the issues and because T.M. asks this Court to now address violations of the IDEA by MDE, which was not addressed in the previous filing.

     c.  possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

20 U.S.C. § 1415(f)(3)(A).

52. The text of the ALJ's decision provides clear evidence that the ALJ lacked all three of these requirements.

<u>The Hearing Officer Lacked Knowledge of, and the Ability to Understand, Legal Interpretations of the IDEA by Federal and State Courts</u>

53. The ALJ's decision was almost entirely devoid of case law, despite the significant case law cited in Petitioner's closing brief.

54. The ALJ's decision references *Endrew F. v. Douglas County School District Re-1*, 137 S. Ct. 988 (2017), which is controlling caselaw on the question of whether a school district has provided a student with a FAPE as guaranteed by the IDEA, only twice within his 21-page order, and completely fails to analyze the FAPE claims under the *Endrew F.* standard as required.

55. The ALJ's decision simply made a conclusory statement that "T.M. has failed to establish by a preponderance of the evidence that [DPSCD] did not offer [T.M.'s] IEPs 'reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.' *Endrew F.*, supra, 137 S Ct at 999," with no substantive analysis or application of the law to the facts of T.M.'s case.

56. It is critical to understand the significance of *Endrew F.*, a unanimous decision by the U.S. Supreme Court, to the current state of the law regarding provision of FAPE by school districts.

57. *Endrew F.* is so significant that the U.S. Department of Education issued guidance instructing school districts on how to comply with its requirements. *See* U.S. DEPARTMENT OF EDUCATION, QUESTIONS AND ANSWERS (Q&A) ON U. S. SUPREME COURT CASE

DECISION *ENDREW F.* V. DOUGLAS COUNTY SCHOOL DISTRICT RE-1 (2017), https://sites.ed.gov/idea/files/qa-endrewcase-12-07-2017.pdf.

58. Failing to analyze Plaintiff's claims under the *Endrew F.* standard is not simply problematic – it indicates a basic lack of understanding of the seminal case on the question of whether a student has received FAPE.

> The Hearing Officer Lacked the Knowledge and Ability to Render and Write Decisions in Accordance with Appropriate, Standard Legal Practice

59. On April 30, 2021, the ALJ issued an Order identifying the issues for hearing.

60. The issues are listed, in relevant part, as:

   a. Failing to comprehensively evaluate T.M. to determine her educational needs;

   b. Failing to revise T.M.'s IEP to address her alleged inability to access an educational benefit and make appropriate progress;

   c. Failing to draft an IEP reasonably calculated to meet T.M.'s educational needs and allow her to access an educational benefit and make appropriate progress; and

   d. Failing to implement T.M.'s IEP as written.

61. At the beginning of the ALJ's decision, he properly identifies those issues exactly as they were identified in the April 30, 2021, Order.

62. The Conclusions of Law section of the decision, however, does not analyze those issues properly.

63. The Conclusions of Law section identifies the issues, in relevant part, as follows:

   a. Alleged Failure to Evaluate Student

   b. Alleged Failure to Draft an Appropriate IEPs [sic]

   c. Alleged Failure to Review and Revise IEPs

   d. Alleged Failure to Implement IEPs

64. The section titled "Alleged Failure to Draft an Appropriate IEPs" misstates and wrongly analyzes the issue.

65. As to the complaint and evidence presented at the hearing, S.C. did not argue that T.M. was not provided with an "appropriate" IEP. In fact, there is no language in the IDEA or any caselaw known to S.C. regarding what an "appropriate" IEP is.

66. S.C. would posit that there is no such thing as an "appropriate" IEP as each IEP should be individually tailored to the needs of a specific child.

67. S.C.'s argument was that, based on the holding in *Endrew F.*, which, as previously discussed, is controlling caselaw on analyzing whether a student has received FAPE as required by the IDEA, DPSCD failed to offer of education to T.M. that was "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 999.

68. There is no analysis anywhere in the decision as to whether any of T.M.'s IEPs presented at the hearing were reasonably calculated to allow her to make progress appropriate to her circumstances.

69. Rendering and writing legal decisions in accordance with appropriate, standard legal practice requires knowledge and understanding of how to analyze legal issues.

70. A basic component of that analysis is applying relevant and controlling law to the facts presented in a case.

71. A failure to apply the facts to the seminal case on the very question presented to a hearing officer constitutes a failure to render a decision in accordance with appropriate, standard legal practice.

72. As such, on April 13, 2023, Plaintiff, by and through her attorney, appealed the ALJ's decision to the U.S. District Court for the Eastern District of Michigan, Case No. 2:23-cv-10852.

**Exhaustion of Administrative Remedies through December 2022 Due Process Complaint Against MDE**

73. The IDEA states that a due process hearing may address any issues "relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child." 34 C.F.R. § 300.507(a).

74. MARSE similarly lists issues that may be the subject matter of a special education due process hearing. Mich. Admin. R. 340.1724f(2).

75. A due process complaint may be filed by a parent or student against the public agency that is responsible for providing the identification, evaluation, educational placement, or provision of FAPE to the Student. *See* 34 C.F.R. §§ 300.507 and 300.508.

76. MDE's mandate is to ensure that every student with a disability is identified, located, evaluated, and provided with a FAPE, which requires MDE's affirmative oversight, supervision, evaluation, and correction of LEAs in the identification of students with disabilities requiring special education and the provision of a FAPE to those students.

77. MDE is responsible for ensuring that hearing officers are properly trained as required by the IDEA.

78. The language in *Endrew F*. pertaining to the "exhaustion of administrative requirements" reads:

> When disagreement arises, parents may turn to dispute resolution procedures established by the IDEA. The parties may resolve their differences informally, through a "[p]reliminary meeting," or, somewhat more formally, through mediation. [20 U.S.C.] §§ 1415(e), (f)(1)(B)(i). If these measures fail to produce accord, the parties may proceed to what the Act calls a "due process hearing" before a state or local educational agency.

§§ 1415(f)(1)(A), (g). And at the conclusion of the administrative process, the losing party may seek redress in state or federal court. [20 U.S.C.] § 1415(i)(2)(A).

137 S. Ct. at 994.

79. On December 19, 2022, S.C. and T.M. still had not received a decision on their due process complaint against DPSCD.

80. At that point, 235 days had elapsed since the due process hearing concluded and 615 days had elapsed since S.C. filed the complaint.

81. T.M. had graduated from high school six months earlier.

82. 20 U.S.C. § 1415(f)(I)(B)(ii) provides: "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence."

83. 34 C.F.R. § 300.515(a) provides:

(a) The public agency must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b), or the adjusted time periods described in § 300.510(c) –
   (1) A final decision is reached in the hearing; and
   (2) A copy of the decision is mailed to each of the parties.
(b) The SEA must ensure that not later than 30 days after the receipt of a request for a review –
   (1) A final decision is reached in the review; and
   (2) A copy of the decision is mailed to each of the parties.
(c) A hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party.

84. There is no provision in the IDEA or its implementing federal regulations for extensions of time which are unilaterally issued by the hearing or reviewing officer absent the request of either party.

85. On December 19, 2022, T.M. filed a Due Process Hearing Request and Complaint under the IDEA, 20 U.S.C. § 1400 *et seq.*, alleging the following violation by MDE: failing to ensure that the due process hearing process was completed within statutorily required timelines and in failing to issue a final decision in the due process hearing within statutorily required timelines.

86. Per its usual practice, MDE referred the complaint to MOAHR for hearing and it was assigned to ALJ Lindsay Wilson.

87. On March 7, 2023, MDE filed a Motion for Summary Disposition and Brief in Support pursuant to M.C.L. 24.272(3), Mich. Ct. R. 2.116(C)(4) and (8), and Mich. Admin. R. 792.10129.

88. On April 18, 2023, ALJ Wilson granted summary disposition for MDE and dismissed T.M.'s December 19, 2022, Due Process Complaint, indicating that MOAHR "lacks jurisdiction over the [] subject matter of [T.M.]'s complaint," and that the complaint "failed to state a claim on which relief can be granted against [] MDE."

89. At the conclusion of the administrative process after a due process complaint is filed, the non-prevailing party may seek redress in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

90. The administrative process was concluded via the ALJ's April 18, 2023, Order.

91. Plaintiff has actively and constructively exhausted all known administrative remedies, as there is no other state agency in Michigan that is required to enforce the implementation of the IDEA.

92. Pursuant to *Endrew F.*, Plaintiff may seek redress of her grievances in state or federal court. 137 S. Ct. at 994.

14

93. As stated previously in this Complaint, jurisdiction is conferred upon this Court by the IDEA, 20 U.S.C. §§ 1415(i)(2)(A) and 1415(i)(3)(A), which provides U.S. district courts with jurisdiction over any action brought under the IDEA, without regard to the amount in controversy.

94. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, based upon the federal question raised herein, and 28 U.S.C. § 1343, because this action is brought to vindicate Plaintiff's civil rights.

95. There remains no other forum in which Plaintiff's claims against MDE can be vindicated.

96. This Court is the only remaining venue that can hear and provide equitable relief for Plaintiff's claims.

**Exhaustion of Administrative Remedies through April 2023 Due Process Complaint Against MDE**

97. The IDEA states that a due process hearing may address any issues "relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child." 34 C.F.R. § 300.507(a).

98. MARSE similarly lists issues that may be the subject matter of a special education due process hearing. Mich. Admin. R. 340.1724f(2).

99. A due process complaint may be filed by a parent or student against the public agency that is responsible for providing the identification, evaluation, educational placement, or provision of FAPE to the Student. See 34 CFR 300.507 and 300.508.

100.    MDE's mandate is to ensure that every student with a disability is identified, located, evaluated, and provided with a FAPE, which requires MDE's affirmative oversight, supervision, evaluation, and correction of LEAs in the identification of students with disabilities requiring special education and the provision of a FAPE to those students.

101.    MDE is responsible for ensuring that hearing officers are properly trained as required by the IDEA.

102.    The language in *Endrew F*. pertaining to the "exhaustion of administrative requirements" is clear: parents may proceed to a "due process hearing before a state or local educational agency," and "at the conclusion of the administrative process, the losing party may seek redress in state or federal court." 137 S. Ct. at 994 (internal quotation marks omitted).

103.    Based upon the violations within MDE's January 13, 2023, hearing decision, on April 20, 2023, T.M. filed a Due Process Hearing Request and Complaint under the IDEA, 20 U.S.C. § 1400 *et seq.*, alleging the following violations against MDE:

   a.    failure to ensure the hearing officer possessed knowledge of, and the ability to understand, the provisions of the IDEA, Federal and State regulations pertaining to the IDEA, and legal interpretations of this chapter by Federal and State courts; and

   b.    failure to ensure the hearing officer possessed the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

104.    On June 15, 2023, MDE filed a Motion for Summary Disposition and Brief in Support pursuant to M.C.L. 24.272(3), Mich. Ct. R. 2.116(C)(4) and (8), and Mich. Admin. R 792.10129.

105.    On June 29, 2023, ALJ Wilson granted summary disposition for MDE and dismissed Petitioner's April 20, 2023, Due Process Complaint, indicating that MOAHR "lacks jurisdiction over the [] subject matter of [T.M.]'s complaint," and that the complaint "failed to state a claim on which relief can be granted against [] MDE."

106.    The administrative process was concluded via the June 29, 2023, order.

107.      Plaintiff has actively and constructively exhausted all known administrative remedies, as there is no other state agency in Michigan that is required to enforce the implementation of the IDEA.

108.      As stated previously in this Complaint, jurisdiction is conferred upon this Court by the IDEA, 20 U.S.C. §§ 1415(i)(2)(A) and 1415(i)(3)(A), which provides U.S. district courts with jurisdiction over any action brought under the IDEA, without regard to the amount in controversy.

109.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, based upon the federal question raised herein, and 28 U.S.C. § 1343, because this action is brought to vindicate Plaintiff's civil rights.

110.      There remains no other forum in which Plaintiff's claims against MDE can be addressed.

111.      This Court is the only remaining venue that can hear and provide equitable relief for Plaintiff's claims.

## COUNT I
### Violations of the
### Individuals with Disabilities Education Act
### 20 U.S.C. §§ 1400 *et seq.*

112.      Plaintiff incorporates here all previously stated allegations.

113.      Under the IDEA, MDE repeatedly failed in its monitoring and supervising obligations. 20 U.S.C. § 1412(a), 1416; 34 C.F.R. § 300.120, 149(a), 600-602, 606-608.

114.      MDE failed to enforce the IDEA when put on notice of Plaintiff's denial of a free appropriate public education. 20 U.S.C. § 1413(g); 34 C.F.R. § 300.151.

115.      MDE violated the IDEA in failing to ensure the hearing officer overseeing T.M.'s due process hearing against DPSCD "possessed knowledge of, and the ability to

understand, the provisions of the IDEA, Federal and State regulations pertaining to the IDEA, and legal interpretations of [the IDEA] by Federal and State courts" and failing to ensure the hearing officer possessed "the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice." 34 C.F.R. § 300.511(c).

116.    MDE failed to sufficiently staff its hearing office to ensure the timely resolution of disputes arising under IDEA.

117.    MDE failed to properly train the staff in its hearing office to ensure that decisions issued complied with state and federal law.

118.    Thus, MDE failed in its ultimate responsibility to ensure that Plaintiff received a FAPE with appropriate supports and services. 20 U.S.C. § 1412(a)(11)(A).

119.    As a direct and proximate cause of MDE's violations of the IDEA, Plaintiff has suffered substantial harm to, among other things, her educational experience and opportunity, academic and intellectual progress, and future earning capacity. Plaintiff has also sustained injuries and damages, including, but not limited to economic loss; loss of earnings capacity; educational loss; pain and suffering; mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment; loss of relationships; damage to her good name; and loss of the ordinary pleasures of everyday life.

## COUNT II
**Discrimination based on disability in violation of
Section 504 of the Rehabilitation Act
29 U.S.C. §§ 794 *et seq.***

120.    Plaintiff incorporates here all previously stated allegations.

121.    Pursuant to Section 504 and its regulations, "[n]o otherwise qualified individual with a disability…shall, solely or by reason or her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794.

122.     The regulations regarding preschool, elementary, and secondary education apply to "preschool, elementary, secondary, and adult education programs or activities that receive Federal financial assistance and to recipients that operate or that received Federal financial assistance for the operation of, such programs or activities." 34 C.F.R. § 104.31.

123.     In general, "[a] recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).

124.     MDE is a recipient of federal financial assistance and operates public elementary or secondary education programs or activities and, thus, is a covered entity under Section 504. 29 U.S.C. § 794.

125.     Plaintiff is a person with disabilities within the meaning of Section 504. 29 U.S.C.§

126.     MDE has intentionally discriminated against Plaintiff in violation of Section 504 by failing to ensure that the timeliness and training provisions of the IDEA were complied with, resulting in a denial of FAPE to Plaintiff.

127.     MDE's failures, including failing to provide oversight and ensure that IDEA violations within DPSCD were timely corrected, had a disparate adverse impact on students with disabilities, including Plaintiff.

128.     As a direct and proximate cause of MDE's violation of Section 504, Plaintiff has suffered substantial harm to, among other things, her educational experience and opportunity, academic and intellectual progress, and future earning capacity.  Plaintiff has

also sustained injuries and damages, including, but not limited to economic loss; loss of earnings capacity; educational loss; pain and suffering; mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment; loss of relationships; damage to her good name; and loss of the ordinary pleasures of everyday life.

**COUNT III**
**Discrimination based on disability in violation of**
**the Americans with Disabilities Act**
**42 U.S.C. §§ 12101 *et seq*.**

129.　　Plaintiff incorporates here all previously stated allegations.

130.　　Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also 28 C.F.R. § 35.

131.　　MDE is a public entity subject to Title II.

132.　　Plaintiff is a person with a disability within the meaning of the ADA. 42 U.S.C. § 12102.

133.　　MDE intentionally violated Plaintiff's rights under the ADA and its regulations by denying her access to equal educational opportunities afforded to students with disabilities; excluding her from participation in and denying her the benefits of the LEA and SEA's services, programs and activities; and subjecting her to discrimination. 42 U.S.C. § 12132.

134.　　MDE otherwise intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 12132.

135.　　As a direct and proximate cause of MDE's violations of the ADA, Plaintiff has suffered substantial harm to, among other things, her educational experience and opportunity, academic and intellectual progress, and future earning capacity. 42 U.S.C. §

20

12132, 12182.  Plaintiff has also sustained injuries and damages, including, but not limited to economic loss; loss of earnings capacity; educational loss; pain and suffering; mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment; loss of relationships; damage to her good name; and loss of the ordinary pleasures of everyday life.

**COUNT IV**
**Discrimination based on disability in violation of**
**Michigan's Persons with Disabilities Civil Rights Act**
**M.C.L. 37.1101 *et seq*.**

136.     Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

137.     MDE is a public service as defined in the Persons with Disabilities Civil Rights Act ("PDCRA"). M.C.L. 37.1101 *et seq*.

138.     Plaintiff is a person with a disability within the meaning of PDCRA. *Id.*

139.     MDE is a place of public accommodation within the meaning of PDCRA.  M.C.L. 37.1301(a).

140.      PDCRA prohibits discrimination due to disability in places of public accommodation. M.C.L. 37.1302.

141.     PDCRA prohibits places of public accommodation from discriminating against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of a disability. M.C.L. 37.1302(a).

142.     PDCRA further prohibits places of public accommodation, including educational facilities, from denying an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations because of a disability. M.C.L. 37.1302(a).

143.     MDE's failure to accommodate T.M. and failure to provide T.M. with a full and equal enjoyment of its services constitute discrimination under PDCRA.

144.     MDE denied T.M. access to a public education on the basis of her disability in violation of PDCRA.

145.     As a direct and proximate cause of MDE's violation of PDCRA, Plaintiff has suffered substantial harm to, among other things, her educational experience and opportunity, academic and intellectual progress, and future earning capacity.  Plaintiff has also sustained injuries and damages, including, but not limited to economic loss; loss of earnings capacity; educational loss; pain and suffering; mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment; loss of relationships; damage to her good name; and loss of the ordinary pleasures of everyday life.

## **RELIEF REQUESTED**

Plaintiff requests that this Court:

1. Issue a Declaratory Judgment on behalf of Plaintiff declaring that the MDE's actions, policies, and practices as alleged herein violate the IDEA; Section 504; Title II of ADA; and the Michigan PDCRA.

2. Issue a Permanent Injunction directing MDE to implement appropriate policies, procedures, training, and protocols to remedy the failures alleged herein with respect to Plaintiff;

3. Issue a final Order and Judgment awarding Plaintiff:

    a. equitable relief and compensatory education or a compensatory education fund given the length of deprivation;

    b. reimbursement for all out-of-pocket expenses and services;

    c.   compensatory related services and transition services as needed;

    d.   compensatory damages in a supplemental needs trust for:

        i.   exclusion due to segregation, loss of friendship and society of typical peers and isolation in the amount of $1,000 per school day for the entire period of the educational loss until such time as the exclusion is cured; and

        ii.   loss of general education time/exclusion from activities and curricula due to Plaintiff's disabilities in the amount of $1,000.00 per school day for the entire period of the educational loss;

4.   Order MDE to hire an expert in special education law, to be mutually agreed upon by the parties, to conduct training on IDEA's substantive requirements regarding Child Find and the provision of FAPE for all administrative law judges hearing special education matters.

5.   Order MDE to hire and/or appoint at least three administrative law judges to solely hear cases brought under IDEA;

6.   Award Plaintiff compensatory damages in whatever amount she is found to be entitled;

7.   Award Plaintiff her costs and reasonable attorneys' fees; and

8.   Order any other and further relief, both legal and equitable, that this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial in the above-captioned matter.

Dated: July 17, 2023               Respectfully submitted,

                              *s/Elizabeth K. Abdnour*
                              Elizabeth K. Abdnour (P78203)
                              ABDNOUR WEIKER, LLP
                              500 E. Michigan Ave., Ste. 130

Lansing, MI 48912
517-994-1776
liz@education-rights.com

Jacquelyn Babinski (P83575)
BARGER & GAINES
90 North Broadway
Irvington, NY 10533
(914) 902-5918
jacquelyn@bargergaines.com

*Attorneys for Plaintiff*