## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

**T.M.**

     Plaintiff,

**v.**

**MICHIGAN DEPARTMENT OF
EDUCATION**, a governmental agency,
     Defendant.

Hon. Paul L. Maloney
Mag. Ray Kent
Case No. 1:23-cv-00762-PLM-RSK

**BRIEF IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

---

Elizabeth K. Abdnour (P78203)
**Abdnour Weiker, LLP**
500 E. Michigan Ave, Ste. 130
Lansing, MI 48912
517-994-1776
liz@education-rights.com

Jacquelyn Kmetz (P83575)
**BARGER & GAINES**
90 North Broadway
Irvington, NY 10533
(914) 902-5918
jacquelyn@bargergaines.com

Attorneys for Plaintiff

Kathleen A. Halloran (P76453)
Kelly A. Carter (P56129)
**Michigan Dep't of Attorney General
Health, Education & Family Services Div.**
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
hallorank1@michigan.gov
carterk@michigan.gov

Attorneys for Defendant

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT MICHIGAN DEPARTMENT OD

## EDUCATION'S MOTION TO DISMISS

Plaintiff T.M., through undersigned counsel, respectfully submits this Opposition to

Defendant Michigan Department of Education's ("Defendant" or "MDE") Motion to Dismiss

Plaintiff's Complaint (ECF No. 9). Plaintiff's factual allegations properly state claims against

MDE, and the Motion must be denied.

## STATEMENT OF FACTS

Plaintiff T.M. is a former student with disabilities in Detroit Public Schools Community District ("DPSCD") who suffered substantial academic harm and lost educational experience and opportunity due to Defendant MDE's systemic failure to monitor and remedy DPSCD's known and continuous violations of state and federal laws regarding the identification and education of students with disabilities. *See* ECF No. 1 at 1. Specifically, Defendant has failed to properly oversee and train hearing officers assigned to hear special education due process hearings within the Michigan Office of Administrative Hearings and Rules (MOAHR). *Id.*

Plaintiff has been diagnosed with Sickle Cell Anemia, ADHD, developmental delays, and speech and language delays. *Id.* at 2. Prior to her graduation, Plaintiff was eligible for special education and entitled to receive a free appropriate public education (FAPE) under the Individuals with Disabilities Education Act (IDEA). *Id.* Plaintiff "is also an individual with a disability within the meaning of Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 (Section 504), and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA)" due to her medical diagnoses of "physical and mental impairment[s] that substantially limit[] one or more major life activities including processing information, concentrating, and learning." *Id.* at 2-3.

Defendant MDE is the state education agency (SEA) primarily responsible for the supervision of the provision of special education in Michigan's local educational agencies (LEAs) and receives funding pursuant to the IDEA assuring that the State has in effect policies and procedures to ensure that all children with disabilities residing within the State receive a FAPE. *Id.* at 3 (citing 20 U.S.C. § 1401(19), (32) and § 1412). As an SEA, Defendant "has general supervisory responsibility for implementing IDEA's requirements" and for "general supervision

2

over each educational program for children with disabilities to ensure the programs meet MDE's

educational standards, which include IDEA's regulatory requirements *Id.* at 5 (citing 20 U.S.C. §

1412(a)(11)(A) and 34 C.F.R. § 300.149(a)). As such, Defendant is responsible for resolving

administrative complaints.

> The IDEA provides that in resolving an administrative complaint:

> In which the SEA has found a failure to provide appropriate services, and SEA, pursuant to its general supervisory authority under Part B of the [IDEA], must address –
> 1. The failure to provide appropriate services, including corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and
> 2. Appropriate future provision of services for all children with disabilities.

34 C.F.R § 300.151(b). The Michigan Administrative Rules for Special Education (MARSE)

requires Defendant to maintain an effective complaint resolution process for claims of denied

education or failure of the district to provide evaluations, programs, and services in accordance

with MARSE. Mich. Admin. R. 340.1851-55. In conducting complaint resolution, the IDEA

requires that:

> A hearing officer conducting a hearing pursuant to paragraph (1)(A) shall, at a minimum— …
> a. possess knowledge of, and the ability to understand, the provisions of this chapter, Federal and State regulations pertaining to this chapter, and legal interpretations of this chapter by Federal and State courts;
> b. possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and
> c. possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

20 U.S.C. § 1415(f)(3)(A).

On April 13, 2021, S.C., T.M.'s mother, filed a due process complaint alleging that DPSCD

was not providing T.M. with FAPE. See ECF No. 1 at 7. The decision in the matter of *S.C. o/b/o

T.M. v. Detroit Public Schools Community District*, Docket No.: 21-007624, Case No.: DP-210007

by Administrative Law Judge (ALJ) Paul Smith was not issued until January 13, 2023, 641 days

following the filing of her complaint and 261 days since the due process hearing concluded. *See* ECF No. 1 at 8. 20 U.S.C. § 1415(f)(I)(B)(ii) provides: "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence." 34 C.F.R. § 300.515(a) provides:

> (a) The public agency must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b), or the adjusted time periods described in § 300.510(c) –
> (1) A final decision is reached in the hearing; and
> (2) A copy of the decision is mailed to each of the parties.
> (b) The SEA must ensure that not later than 30 days after the receipt of a request for a review –
> (1) A final decision is reached in the review; and
> (2) A copy of the decision is mailed to each of the parties.
> (c) A hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party.

It should be noted that "There is no provision in the IDEA or its implementing federal regulations for extensions of time which are unilaterally issued by the hearing or reviewing officer absent the request of either party." *Id.* at 13.

Not only did the ALJ completely ignore the required time limitations in issuing his decision, but the text of his decision provides clear evidence that the ALJ lacked the knowledge and abilities as required under 20 U.S.C. § 1415(f)(3)(A). *See* ECF No. 1. at 9. The ALJ's decision: (1) was almost entirely devoid of case law, despite the significant case law cited in Plaintiff's closing brief; (2) references *Endrew F. v. Douglas County School District Re-1*, 137 S. Ct. 988 (2017), the controlling caselaw on the question of whether a school district has provided a student with a FAPE as guaranteed by the IDEA, only twice within his 21-page order, and; (3) completely fails to analyze the FAPE claims under the *Endrew F.* standard as required. *See* ECF No. 1. at 9.

The ALJ's failure to analyze Plaintiff's claims under the *Endrew F.* standard "indicates a basic lack of understanding of the seminal case on the question of whether a student has received FAPE." *Id.* at 10.  Further, though the ALJ properly identified the issues for hearing within his decision, the ALJ failed to address these identified issues within his Conclusions of Law. *Id.* at 10. Rendering and writing legal decisions in accordance with appropriate, standard legal practice requires knowledge and understanding of how to analyze legal issues, which requires the application of relevant and controlling law to the facts presented in a case. *Id.* at 11. "A failure to apply the facts to the seminal case on the very question presented to a hearing officer constitutes a failure to render a decision in accordance with appropriate, standard legal practice." *Id.*

Based upon the violations within MDE's January 13, 2023, hearing decision, on April 20, 2023, T.M. has sufficiently alleged that the Defendant has failed "to ensure the hearing officer possessed knowledge of, and the ability to understand, the provisions of the IDEA, Federal and State regulations pertaining to the IDEA, and legal interpretations of this chapter by Federal and State courts," and has further failed "to ensure the hearing officer possessed the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice." *Id.* at 16.

In their Motion, Defendant asserts that Plaintiff has failed to state a claim for violations of the IDEA, ADA, and Section 504. *See* ECF No. 9 at 9. Defendant further asserts that Plaintiff is not entitle to money damages under the IDEA, injunctive or declaratory relief. *Id.* On top of these assertions, Defendant also believes that Plaintiff's claims are not ripe for judicial review and that Eleventh Amendment immunity bars her PWDCRA and ADA claims. *Id.* Conversely, Defendant's Motion inadequately addresses and misconstrues the allegations presented by Plaintiff. Not only do Defendant's arguments overlook and misunderstand the core contentions raised in Plaintiff's

Complaint, but it also lacks support from relevant case law within the Sixth Circuit. By relying on non-controlling case law from jurisdictions beyond this Court's scope, Defendant's motion fails to acknowledge the legal landscape within this specific circuit. This oversight diminishes the credibility and applicability of their assertions to the present case, warranting dismissal of their Motion. Accordingly, for the following reasons, Plaintiff respectfully requests that this Court deny Defendant Michigan Department of Education's Motion to Dismiss.

**<u>STANDARD OF REVIEW</u>**

To survive a motion to dismiss, a complaint must contain a "short a plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The United States Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is more than a sheer possibility, but it is not a probability requirement. See *Twombly*, 550 U.S. at 556. A complaint states a plausible claim for relief, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reading the alleged facts, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)). Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted).

**<u>LAW AND ARGUMENT</u>**

I.      **Plaintiff's factual allegations properly state a claim against MDE and must not be dismissed under Federal Rule of Civil Procedure 12(b)(6)**

      *a.*  <u>**Plaintiff has sufficiently plead a claim against MDE for a violation of the IDEA**</u>

The IDEA states in pertinent part that "Any State educational agency . . . that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a).

In 2010, a suit was filed by an LEA alleging that MDE was "neglecting [its] ongoing obligation to monitor and enforce the IDEA's procedural safeguards and [its] duty to supervise [Michigan State Office of Administrative Hearings and Rules ("SOAHR")]'s implementation of the due process hearing system in Michigan." *Traverse Bay Area Intermediate School District v. Mich. Dep't of Educ.*, 615 F.3d 622, 626 (6th Cir. 2010) (internal quotations omitted). Though the Sixth Circuit decided that because LEAs are not an 'aggrieved party' under § 1415(i)(2)(A), they do not possess a private right to challenge a SEA's compliance with the IDEA,  their analysis of the IDEA yielded that there is an express right to sue created for parents with disabled children by the text of a statute for complaints that relate "to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* at 626-28 (quoting 20 U.S.C. § 1415(b)(6)(A)). "Simply put, the procedural safeguards articulated in § 1415 were enacted so that parents with disabled children could enforce their child's right to a FAPE." *Id.* at 629.

Defendants, in their Motion, only cite one case from the Sixth Circuit to support their argument for the dismissal of Plaintiff's Complaint.  In fact, the holding of Defendant's cited case actually leans in Plaintiff's favor. The Middle District of Tennessee court confirmed that the "IDEA creates a cause of action for a child who has been denied a FAPE by the agencies charged with ensuring that he receives one, if he meets certain procedural requirements." *J.M. v. Tenn. Dep't of Educ.*, 358 F. Supp. 3d 736, 746 (M.D. Tenn. 2018) (citing 20 U.S.C. § 1415(i)(2)). Though defendant Tennessee Department of Education attempted to use *Traverse City* for support in showing that an SEA could not be sued for violations of the IDEA, the court rejected this argument, distinguishing J.M.'s case by noting that "J.M.'s suit, in contrast, is directly related to the provision of a FAPE in the case of a particular child, namely, J.M. himself." *Id.* at 747. Indeed, the court confirmed that the IDEA contains no express limitation for a cause of action against local authorities. *Id.* at 748. The court specifically concluded "that a student may sue a state educational agency under the IDEA, if the state educational agency's failures actually led to the denial of the student's FAPE." *Id.*

In the present case, similar to *J.M.*, T.M.'s case is directly related to the provision of a FAPE in the case of a particular child, namely, T.M. herself. T.M. was a disabled child entitled to a FAPE; her school district provided her with special education services, but those services fell short of statutory requirements that had been incorporated into the definition of FAPE; and, as a result, T.M.'s mother filed suit on her behalf. Although the party best situated to immediately affect T.M.'s education was DPS, T.M. separately filed suit against MDE because, under the express terms of the IDEA, "[t]he State educational agency is responsible for ensuring that . . . all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency...meet the educational standards of the

State educational agency." 20 U.S.C. § 1412(a)(11)(A). T.M. has alleged systemic violations of the State's responsibilities under the IDEA that gives rise to state liability. MDE is a proper defendant in this action, which challenges insufficiencies in the State's establishment and training of ALJs that allegedly interferes with the provision of FAPE for disabled students in a systemic manner.

Finally, the court in *J.M.* was clear that "In order to prevail on his claims against the State Defendants, J.M. would be required to tie [the] alleged failings [of the Tennessee Board of Education] to the details of his treatment by [the LEA]." *Id.* The court makes it clear though that this inquiry would be better suited for a summary judgment motion, rather than "whether the IDEA permits suit against state-level defendants at all." *Id.* Thus, Plaintiff has met the necessary requirements to plead a claim against MDE for a violation of the IDEA.

### b. Plaintiff has sufficiently plead a claim against MDE for a violation of the ADA and the Rehabilitation Act

Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also 28 C.F.R. § 35. To state a claim under Title II, Plaintiff must show: (1) that she is qualified individuals with a disability; (2) that Defendant is subject to the ADA; and (3) that Plaintiff was denied the opportunity to participate in or benefit from services, programs, or activities provided by the State. See *Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

Plaintiff has alleged standing including as: (1) a "qualified individual with a disability," 42 U.S.C. § 12131(2) and (2) a "person with a disability (or) disabilities," M.C.L. 37.1103(h). Compl.,

ECF No. 1, ¶ 132, 138. Plaintiffs have also alleged that MDE is a public entity subject to the ADA. 42 U.S.C. § 12131(1)(B); Compl., ECF No. 1, ¶ 131. Most notably, Plaintiff has alleged that she has been denied the opportunity to participate in or benefit from services, programs, or activities provided by MDE. *Id.* at 133. Specifically, Plaintiff has alleged that because MDE intentionally denied her access to equal educational opportunities afforded to students with disabilities through MDE's failure to properly oversee and train hearing officers assigned to hear special education due process hearings within the MOAHR, she was excluded from participation in and denied her the benefits of the LEA and SEA's services, programs and activities.

Similarly, Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its implementing regulations provide, in pertinent part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 794(a); see also 34 C.F.R. § 104.4(a).

To survive a motion to dismiss a Section 504 claim, the Sixth Circuit has held that a plaintiff must allege facts allowing for the reasonable inference that (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified for participation in the program; (3) the plaintiff is being excluded from participation in, denied benefits of, or being subjected to discrimination under the program solely due to a disability; and (4) the relevant program or activity is receiving federal financial assistance. *Landefeld v. Marion Gen. Hosp. Inc.*, 994 F.2d 1178, 1180-1181 (6th Cir. 1993); *see also G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623, 635 (6th Cir. 2013); *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 165 (6th Cir. 2003); *Doherty v. S. College of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988)).

As such, again, Plaintiff has alleged each of the required elements to satisfy a claim for a violation of Section 504. Plaintiff has alleged standing as qualified individual with a disability, 29 U.S.C. § 705. ECF No. 1, ¶ 125. Plaintiff also alleges that she is qualified for participation in the program as a "qualified handicapped person who is in the recipient's jurisdiction" who must be "provide[d] a free appropriate public education." 34 C.F.R. § 104.33(a), see ECF No. 1, ¶ 122. Particularly, Plaintiff alleged that, due to MDE's failure to ensure that the timeliness and training provisions of the IDEA were complied with, Plaintiff was denied the benefits of the program; namely, Plaintiff was denied a FAPE and subject to discrimination. *Id.* at ¶ 123, 126-127. Plaintiff also clearly established that MDE "is a recipient of federal financial assistance and operates public elementary or secondary education programs or activities." *Id.* at ¶ 124.

Though Defendant cites *Campbell* to show argue that Plaintiff must allege that Defendant acted in bad faith or with gross misjudgment to support a finding a violation of Section 504, the Sixth Circuit is clear that this is an "evidentiary hurdle," meaning that this argument is best reserved for summary judgment rather than a motion to dismiss. *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 167 (6th Cir. 2003). Further, Defendant cites case law from outside the Sixth Circuit to support their argument that Plaintiff must allege that she was discriminated *solely* by reason of his or her disability and that MDE acted with bad faith or deliberate indifference. See ECF No. 9 at 14 (citing *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982) and *C.L. v. Scarsdale Union Free School Dist.*, 744 F.3d 826 (2d Cir. 2014)). However, the Eastern District of Michigan declined to give *Monahan* this authority in *Howell* where that court held that the plaintiff's allegations that he was "not being provided the proper amount of therapy nor provided therapy in the proper manner state an actionable [Section] 504 claim." *Howell v. Waterford Public Schools*, 731 F. Supp. 1314, 1319 (E.D. Mich. 1990).

Thus, Defendant's assertion that the Second Amendment Complaint lacks facts sufficiently alleging that MDE violated Section 504 is without merit. For these reasons, the Court must deny Defendant's Motion to Dismiss Plaintiffs' Section 504 claim.

### c.   Plaintiff has sufficiently plead a claim for monetary damages under the IDEA

Defendant asserts: "No monetary damages may be awarded to the plaintiff in [a] case under the IDEA."  Long v. Dawson Springs Indep. Sch. Dist., 197 Fed. App'x 427, 432 (6th Cir. 2006). Petitioner does not dispute that such monetary damages may not be awarded under IDEA. However, such monetary damages may be awarded, and are requested, pursuant to Petitioner's additional claims under ADA and Section 504 of the Rehabilitation Act. *See Dorsey v. City of Detroit*, 157 F. Supp. 2d 729, 731 (E.D. Mich. 2001) (finding that compensatory damages are available under Title II of the ADA) and *Johnson v. Saline*, 151 F.3d 564, 573 (6th Cir. 1998) (affirming that compensatory damages may be awarded for violations of Section 504 of the Rehabilitation Act and under Title II of the ADA).

### d.   Plaintiff has sufficiently plead a claim for injunctive relief

The Sixth Circuit has consistently noted that the following three elements are necessary to establish standing: "(1) 'injury in fact—a harm that is both concrete and actual or imminent, not conjectural or hypothetical,' (2) causation—a 'fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant,' and (3) 'redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact.'" *Babcock v. Michigan*, 812 F.3d 531, 539 (6th Cir. 2016) (quoting *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,

529 U.S. 765, 771, (2000)); *see also Simpson-Vlach v. Michigan Dep't of Educ.*, 616 F. Supp. 3d 711, 725 (E.D. Mich. 2022).

"In the context of claims for injunctive or declaratory relief, the threatened injury in fact must … [be] actual and imminent…."  616 F. Supp. 3d at 724. The Sixth Circuit is clear that a plaintiff must allege ongoing or future harm, rather than past harm, in order to be entitled to injunctive or declaratory relief. *Id. See also Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405-06 (6th Cir. 2019) (affirming that "the fact that a harm occurred in the past does nothing to establish a real and immediate threat that it will occur in the future, as is required for injunctive relief") and *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (stating that "[w]hen seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm…."). Defendant uses case law from outside this circuit to argue that injunctive relief for violations of the IDEA is unavailable following a student's graduation. See ECF No. 9 at 25. However, this case law is not controlling in this circuit and ignores the fact that students, like Plaintiff, can have actual ongoing or future harm occurring due to a defendant's actions.

Here, Plaintiff has sufficiently plead that she continues to suffer ongoing and future harm due to the Defendant's violations of federal law. In her due process complaint against DPSCD. Plaintiff alleges that DPSCD denied her a Free and Appropriate Public Education ("FAPE") by failing to evaluate her, failing to draft an IEP reasonably calculated to meet her educational needs, failing to revise her IEP to enable her to make progress, and by failing to implement her IEP as written. Plaintiff further alleged that due to DPSCD's violations of the IDEA, she graduated high school with elementary to middle school level reading, writing, and math skills. Specifically, due to DPSCD's denial of a FAPE, Plaintiff has alleged that she lacks the foundational skills needed

to be a productive member of society and to succeed in her postgraduation plans to study business and cosmetology and to one day open her own salon, pursuant to her interest in doing hair and nails. Plaintiff seeks compensatory education services from DPSCD to help her advance as far as possible towards the level of a high school graduate in reading, writing, and math and to provide her behavioral and mental supports to address her underlying social-emotional needs.

Due to Defendant's violations as alleged in Plaintiff's Complaint, including their failure to properly train and supervise their ALJs to make timely and appropriate decisions regarding school districts' violations of the IDEA, Plaintiff continues to suffer the ongoing harm of only having an elementary or middle school level reading, writing, and math skills, which negatively affect her employability and ability to work. Further, because the ALJ rendered an inappropriate decision regarding DPSCD's provision of FAPE to Plaintiff, Plaintiff is now forced to expend further finances on legal services in order to redress her grievances with both the DPSCD and Defendant. Because Plaintiff has alleged actual, ongoing harm, she is entitled to a permanent injunction directing MDE to implement appropriate policies, procedures, training, and protocols to remedy the failures alleged herein with respect to Plaintiff.

### e. Plaintiff has sufficiently plead a claim for declaratory relief

"Obtaining standing for declaratory relief has the same requirements as obtaining standing for injunctive relief." *Simpson-Vlach.*, 616 F. Supp. 3d at 725 (*citing National Rifle Ass'n of Am.*, 132 F.3d at 279. Plaintiff incorporates her argument in Sec. II.d. herein by reference. Because Plaintiff has alleged actual, ongoing harm, she is also entitled to declaratory relief.

Defendant also attempts to state that Plaintiff's allegations are conclusory and therefore no actual controversy exists. See ECF No. 9 at 25-26. It is true that "legal conclusions…must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "When there are well-pleaded factual

14

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Plaintiff has provided legal conclusions supported by factual allegations. First, Plaintiff provided a factual allegation that Defendant is responsible for resolving administrative complaints and "for ensuring that hearing officers are properly trained as required by the IDEA." *See* ECF No. 1 at 5, 9. Plaintiff further alleged that "ALJ Smith's January 13, 2023, hearing decision is riddled with errors and provides evidence that he was not properly trained in violation of IDEA requirements." *Id.* at 8. Specifically, Plaintiff alleged that "[t]he text of the ALJ's decision provides clear evidence that the ALJ lacked all three of [the] requirements [for knowledge and ability under 20 U.S.C. § 1415(f)(3)(A)]." *Id.* at 8-9.

The legal conclusion that MDE failed to properly train and supervise its ALJs is supported by well-pleaded, factual allegations as required under *Iqbal*. Therefore, there is a controversy at hand, and this Court must assume the veracity of the factual allegations and issue a declaratory judgment on behalf of Plaintiff declaring that the MDE's actions, policies, and practices as alleged herein violate the IDEA; Section 504; Title II of ADA; and the Michigan PDCRA.

## II.     Plaintiff's claims are ripe for judicial review and this case must not be dismissed pursuant to Fed. R. Civ. P. 12(b)(1)

"Determining whether administrative action is ripe for judicial review requires [a court] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003). The Sixth Circuit requires the following elements to be satisfied for the determination of a claim's ripeness for review: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the

merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008) (quoting *Insomnia, Inc. v. City of Memphis*, 278 F. App'x 609, 612 (6th Cir. 2008) and *Warshak v. United States*, 490 F.3d 455, 467 (6th Cir. 2007)).

Defendant argues that this case is not ripe for judicial review because the ALJ's decision has not yet been overturned by the district court. See ECF No. 9 at 27. Defendant's argument is centralized on the idea that Plaintiff claims MDE denied her a FAPE, while completely ignoring Plaintiff's claim that MDE violated several alternative provisions of the IDEA, including their responsibility "for ensuring that . . . all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency...meet the educational standards of the State educational agency" by failing to properly oversee and train MOAHR staff. 20 U.S.C. § 1412(a)(11)(A).

The likelihood of the alleged harm is substantial. If MDE is not providing proper oversight and training of their ALJs, then there will be substantial harm to the disabled student community, as their cases will be unable to be properly analyzed and discrimination will continue to occur. Further, the factual record is sufficient to produce a fair adjudication of the merits on Plaintiff's claims. In *Doster*, the defendant's motion to dismiss was denied when "[e]ach party provided significant briefing on each motion filed thus far, together with numerous declarations and evidence in support of their positions," and with consideration to the fact that "the factual record will continue to develop over the course of this litigation, since discovery has not begun." *Doster v. Kendall*, 615 F. Supp. 3d 741, 615 F. Supp. 3d 741, 747-48 3(S.D. Ohio 2022). In the present case, Plaintiff presents sufficient evidence in her complaint to support her allegations that Defendant had failed to sufficiently staff its hearing office to ensure the timely resolution of

disputes arising under IDEA and failed to properly train the staff in its hearing office to ensure that decisions issued complied with state and federal law. As such, Plaintiff has sufficiently established and will continue to establish a factual record that will produce a fair adjudication of the merits of her claims.

Plaintiff will experience substantial hardship if judicial relief is denied at this stage in the proceeding. As stated in Part I, Section d Plaintiff continues to experience substantial hardship due to having only an elementary or middle school level reading, writing, and math skills, which negatively affect her employability and ability to work. Because the ALJ rendered an inappropriate decision regarding the District's provision of FAPE to Plaintiff, Plaintiff also continues to experience substantial hardship as she is now forced to expend further finances on legal services in order to redress her grievances with both the District and Defendant.

III.     **Plaintiff's ADA and PWDCRA claims against MDE are not barred by Eleventh Amendment immunity**

    a.   *Plaintiffs' ADA Title II claim against MDE is not barred by the Eleventh Amendment.*

Although the Supreme Court has not yet decided whether Congress validly abrogated state sovereign immunity in Title II of the ADA, Congress was "unequivocal" in its intent to abrogate sovereign immunity for all claims under the ADA, *see U.S. v. Ga.*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12202), and every Circuit Court of Appeals to consider the question in the context of public education has held that such abrogation was constitutionally valid. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 556 (3d Cir. 2007) (holding that state sovereign immunity was validly abrogated with respect to a Title II claim involving a disabled student's access to a sports program at a public institution of higher education); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st

17

Cir. 2006) (same holding with respect to a claim for failure to reasonably accommodate a disabled university student); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) (same for a Title II claim involving denial of accommodations for college student with a medical condition); *Assn'n for Disabled Ams. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005) (same for a Title II claim involving denial of sign language interpreters for a college student); *see also Dean v. Univ. at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 195 n. 9 (2d Cir. 2015) (declining to rule on this issue but noting that the other circuits to do so have held that abrogation is valid).

The Sixth Circuit has not specifically addressed Title II abrogation in the context of public education claims, but district courts within the Sixth Circuit have embraced the consensus of other circuits. *See e.g., Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475, 481 (N.D. Ohio 2007) (holding that Congress validly abrogated state sovereign immunity with respect to ADA Title II claim against state university). Although most public education Title II claims have arisen in the context of higher education, at least one district court in this circuit has approved the abrogation of sovereign immunity in other public education contexts as well. In *W.H. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 7206 (M.D. Tenn. Jan. 20, 2016), the court was "swayed by these other circuits' holdings" and found that "there is no reason to differentiate the analysis with respect to the right to public primary education." *Id.* at *29-30. This Court should reach the same conclusion here.

MDE argues that Plaintiffs fail to plead sufficient facts to state a claim under Title II, which MDE contends would bar the abrogation of sovereign immunity under the Eleventh Amendment. See ECF No. 9 at 21. But this is not really a sovereign immunity argument so much as a question

of whether Plaintiffs have stated a claim, and since Plaintiffs have sufficiently pleaded systemic Title II violations, *see* Part I, Section b *infra* at 8-9, this argument fails.

For this reason, *Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016), is easily distinguishable. *Babcock* held that a Title II suit was barred because it alleged exclusion from "access to a specific facility" instead of the "public service, program, or activity" covered by Title II. *Id.* at 535. Because the plaintiff "failed to identify conduct that violates the ADA," her claim failed. *Id.* at 539. In other words, *Babcock* never reached the question of whether, had the plaintiff stated a Title II claim, state sovereign immunity would have barred it.

In this case, by contrast, Plaintiffs' ADA claim against MDE is based on discrimination in and exclusion from educational services, programs or activities, which are undeniably covered by Title II, not the alleged physical denial of access to facilities at issue in *Babcock*. Based on Plaintiffs' well-pleaded allegations of MDE's Title II violations, this court should hold that "with respect to the right to public primary education . . ., [42 U.S.C. §] 12202 validly applies to abrogate . . . Eleventh Amendment immunity." *W.H.*, 2016 U.S. Dist. LEXIS 7206, at *30.

Finally, if this Court nevertheless concludes that Title II of the ADA does not validly abrogate state sovereign immunity, Plaintiffs should be granted leave to amend their Complaint to add Brian J. Whiston, the state superintendent of public instruction, as an official-capacity defendant under the Ex Parte Young doctrine.[1] *See Carten v. Kent State Univ.*, 282 F.3d 391, 395-97 (6th Cir. 2002) (applying Ex Parte Young to allow plaintiffs' ADA Title II claim for prospective relief against state officials); *Nelson v. Miller*, 170 F.3d 641, 646-47 (6th Cir. 1999) (same). Sovereign immunity can be a formidable obstacle to the recovery of damages. Accordingly, if the

---

[1] Under Michigan law, the state superintendent is the principal executive officer of MDE. Mich. Comp. Laws § 16.405.

19

court is persuaded that MDE itself has sovereign immunity, it should permit an amendment to the Complaint to name an MDE state official as defendant rather than dismiss Plaintiffs' otherwise valid ADA claim on a pleading technicality.

### b. Plaintiffs' PWDCRA claim against MDE is not barred by the Eleventh Amendment.

Plaintiff concedes that case law supports that Michigan State court should have jurisdiction over this State claim. However, Federal Rule of Civil Procedure 42(a) allows for consolidation of related claims to promote judicial efficiency. Addressing similar issues in separate courts leads to redundant proceedings, wasting time and money for both the parties involved and the court system. By consolidating these claims, the court can resolve all related matters in one comprehensive proceeding, saving valuable resources. Furthermore, having multiple parallel cases across state and federal courts can cause confusion and potential delays. Consolidating the claims in one court streamlines the process, reducing the likelihood of contradictory decisions and expediting the resolution of disputes. Consolidating state claims with federal claims in this Court will not only streamline the judicial process, but also serve the interests of justice and efficiency. As such, this Court must hear Plaintiff's claim under the PWDCRA and deny Defendant's Motion to Dismiss.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Michigan Department of Education's Motion to Dismiss.

Respectfully submitted,
Attorneys for Plaintiffs

  **/s/ Elizabeth K. Abdnour**

Elizabeth K. Abdnour (P78203)

**Abdnour Weiker, LLP**

500 E. Michigan Ave., Ste. 130

Lansing, MI 48912

517-994-1776

elizabeth@education-rights.com


  **/s/ Jacquelyn** Kmetz

Jacquelyn Kmetz(P83575)

**BARGER & GAINES**

90 North Broadway

Irvington, NY 10533

(914) 902-5918

jacquelyn@bargergaines.com


Dated: December 15, 2023

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on December 15, 2023, I have electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which will provide a true and correct copy of the foregoing to all counsel of record by email.

Respectfully submitted,

**_/s/ Elizabeth K. Abdnour_____**
Elizabeth K. Abdnour (P78203)
**Abdnour Weiker, LLP**
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
517-994-1776
liz@education-rights.com

**_/s/ Jacquelyn Kmetz_____**
Jacquelyn Kmetz (P83575)
**BARGER & GAINES**
90 North Broadway
Irvington, NY 10533
(914) 902-5918
jacquelyn@bargergaines.com

Attorneys for Plaintiff

Dated: December 15, 2023